**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| **BENJAMIN D. TARVER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:26-cv-00986-AGM-NWH** |
| | ) | |
| **REPUBLIC FINANCE, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## REPUBLIC FINANCE, LLC'S MOTION TO COMPEL ARBITRATION

Plaintiff, Benjamin D. Tarver, filed his Complaint (Doc. 1, the "Complaint"), asserting claims against Defendant, Republic Finance, LLC ("Republic"), under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et seq. (the "FCCPA"). Tarver fails to mention in his Complaint that he is, simultaneous with this action, pursuing FCRA and FCCPA claims against Republic in a prior-filed pending arbitration (the "Arbitration") before the American Arbitration Association (the "AAA") in accordance with the orders of two different courts: (1) the District Court of Mobile County, Alabama (the "Mobile County Court"), which entered an order on February 24, 2026 compelling the parties the arbitration, on *Tarver's own motion*, and (2) the County Court of the Ninth Judicial Circuit for Orange County, Florida

(the "Orange County Court"), which ordered to arbitration a second action also commenced by Tarver *after* he had already initiated the Arbitration. Tarver's needless initiation of this action can only be construed as an abuse of the judicial process intended to inflict unnecessary costs on Republic and delay the efficient administration of the parties' claims currently pending in the court-ordered Arbitration.

Republic moves this Court to enter a third order compelling Tarver to proceed with his duplicative claims in this action, and any other claims he might assert against Republic relating to his Republic loan, through the previously filed Arbitration pursuant to the Arbitration Agreement ("Arbitration Agreement") binding upon him. In support of this Motion, Republic relies on the declaration of Katie Summer, SVP, Deputy General Counsel, and custodian of records for Republic, attached as **Exhibit A**, and states as follows:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    <u>The Loan and Arbitration Agreement.</u>

1.    On August 29, 2024, Tarver obtained a loan in the amount of $14,902.14 from Republic ("Loan"). Ex. A ¶ 5; Ex. A-1 at 1.

2.    That same day, Tarver executed a Combination Promissory Note, Truth in Lending Disclosure Statement, and Security Agreement ("Note") evidencing and governing the Loan in favor of Republic. Ex. A ¶ 6; Ex. A-1 at 2.

2

3.      The Note informed Tarver "[t]he obligations and related claims of the parties to this Combination Promissory Note, Truth in Lending Disclosure Statement, and Security Agreement, are subject to the Arbitration Agreement signed as part of this transaction." Ex. A-1 at 2.

4.      Tarver signed the Arbitration Agreement the same day as the Note, agreeing to the terms therein. Ex. A-2.

5.      Tarver executed both the Note and the Arbitration Agreement at a Republic Finance branch located at 1234 Hillcrest Road, Suite A, Mobile, Alabama 36695.

6.      The Arbitration Agreement provides at the top in bolded type:

**BINDING (MANDATORY) ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL**
**READ this agreement carefully. By signing below, you agree to this Arbitration Agreement.**

**Under this Agreement, you or Lender may elect to arbitrate disputes between the parties, in which case, such disputes will then be resolved by BINDING ARBITRATION if not settled first. You thus GIVE UP YOUR RIGHT TO GO TO COURT or to BRING OR PARTICIPATE IN A CLASS ACTION over those disputes. Your rights will be determined by a NEUTRAL ARBITRATOR, NOT A JUDGE OR JURY. You are entitled to a FAIR HEARING, BUT arbitration procedures are MORE LIMITED THAN RULES IN COURT. Arbitrator decisions are enforceable in court but are subject to VERY LIMITED REVIEW BY A COURT. This Agreement also contains a JURY WAIVER FOR ALL DISPUTES between you and Lender, even those that are not arbitrated. CONSULT A LAWYER BEFORE SIGNING if you do not understand this agreement. You have the right to reject this Agreement for 30 days (see below for more information).**

*Id.* at 1. The Arbitration Agreement defines "Lender" to include Republic and its agents, and defines "you" and "your" as "the borrower(s), co-maker(s), co-signer(s), debtor(s) . . . and guarantor(s), and their respective heirs, executors, successors, assigns, administrators, trustees, trustees in bankruptcy and any other person claiming rights arising out of, in connection with, or relating to your relationship with Lender." Ex. A-2 § 2.

7.     The Arbitration Agreement provides under the provision titled "Agreement to Arbitrate":

> You and Lender agree that, as a material inducement for the parties to enter into the loan and as consideration for your loan, any claim, dispute or controversy between you and Lender whether in contract or tort or under common law, any state or federal constitution, **any statute**, regulation, or local law, or otherwise ("Claims" or "Claim"), arising out of, in connection with, or relating to any of the following in any way, directly or indirectly, shall, at the election of either party, be resolved by binding arbitration and not by a court action: your loan (see definition in Section 2 below); your relationship with the Lender; any applications, advertisements, **oral or written statements or communications**, disclosures, **electronic communications**, **collection efforts**, collateral, and/or insurance related to your loan; **any disclosure of your information by Lender to any party**; Lender's supervision and/or training of employees and agents; and/or the existence, applicability, enforceability, or scope (**including whether a dispute is arbitrable**) of this Arbitration Agreement (the "Agreement"). Claim also includes any cross-claim or counterclaim. For the avoidance of doubt, Claim has the broadest meaning possible under this Agreement. Under this Agreement, if a party elects arbitration, the parties give up the right to a trial in court. The arbitrator's decision cannot be appealed and is subject to only limited judicial review.

*Id.* § 1 (bolded emphasis added).

8.     Section 4 of the Arbitration Agreement also states: "[A] party can elect to arbitrate any Claim, even if a party has already initiated litigation in court related to the Claim, by: (a) making a written demand upon the other party to arbitrate the Claim or (b) filing in court a motion to compel arbitration of the Claim."

9.     The Arbitration Agreement provides the American Arbitration Association ("AAA") Consumer Arbitration Rules will apply to arbitrations under the Arbitration Agreement. *Id.* § 6.

10.    The Arbitration Agreement additionally states:

> The parties acknowledge and agree that this Agreement is made pursuant to a transaction involving interstate commerce. Therefore, the parties agree that the enforceability and interpretation of this Agreement shall be governed by the Federal Arbitration Act ("FAA") to the fullest extent possible, notwithstanding anything else herein or any state law to the contrary. . . . [T]his Agreement shall be governed, to the extent the FAA is found not to apply, by the law of the State of Alabama's arbitration code, if any.

*Id.* § 9.

**B.     The Pending Arbitration and Subsequent Actions.**

11.    Tarver failed to make payments on his Loan as required under the Note. Ex. A ¶ 8.

12.    Republic filed suit in the District Court of Mobile County, Alabama ("Mobile County District Court") on July 22, 2025.

13.    Tarver filed a Motion to Compel Arbitration on February 9, 2026, which the Mobile County District Court granted by order entered February 24, 2026. True and correct copies of Tarver's Motion to Compel Arbitration and the order granting his motion are attached as collective **Exhibit B**.[1]

---

[1] The dockets of the Mobile County and Orange County Courts are capable of judicial notice by this Court. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020)

14.     Tarver initiated the Arbitration against Republic before the AAA shortly thereafter. Ex. A-3 (as amended, the "Demand for Arbitration"). Republic received notice of the Arbitration on or about April 3, 2026. Ex. A ¶ 9.

15.     Pursuant to his Demand for Arbitration, Tarver claims damages from Republic in the amount of $380,000 for claims related to and arising out of his Loan. Ex. A-3. Just as in the Complaint, in the Demand for Arbitration Tarver purports to bring claims against Republic for alleged violations of the FCRA and the FCCPA. *Id.*

16.     After commencing the pending Arbitration, Tarver initiated an action against Republic on April 19, 2026, in the County Court of the Ninth Judicial Circuit, in and for Orange County, Florida, styled *Benjamin D. Tarver v. Republic Finance, LLC*, No. 2026-SC-011129-O (the "Orange County Case").

17.     In the Orange County Case, Tarver alleged Republic attempted to communicate with him regarding the Loan contrary to Tarver's direction in alleged violation of section 559.72(18) of the FCCPA. *Id.*

18.     Republic filed a Motion to Compel Arbitration in the Orange County Case on May 5, 2026. Tarver, despite representing to Republic's counsel that he opposed Republic's motion, failed to appear for the hearing, and the Orange County

_____

(holding filings "noticed from the online state court dockets constitute judicially noticeable facts under [Federal] Rule [of Evidence] 201.").

Court entered an order compelling the Orange County Case to arbitration on May 28, 2026. True and correct copies of Republic's Motion to Compel Arbitration in the Orange County Case and the Orange County Court's order granting same are attached hereto as composite **Exhibit C**.

19.     Meanwhile, Tarver continued to submit filings in the Arbitration, filing amended claims on April 22, 2026, May 6, 2026, and June 2, 2026, each asserting increasing damages demands for the same FCCPA and FCRA claims. Ex. A-3 at 3–5; Ex. A ¶ 9.

20.     On May 11, 2026, Tarver filed his Complaint initiating this action, again alleging claims against Republic under the FCRA and § 559.72 of the FCCPA, despite having already alleged *the exact same claims* in the active pending Arbitration. (Doc. 1); Ex. A-3.

## II.     ARGUMENT

### A.     Legal Standard.

The Court should enter an order requiring Tarver to pursue the claims asserted in this action, and any other claims Tarver might attempt to assert against Republic relating to his Loan, to binding mandatory arbitration in accordance with the Arbitration Agreement because Tarver has already invoked arbitration to address the exact same claims and exact same transactions, facts, and allegations presented here.

Two different Courts have already ordered Tarver's claims to arbitration, and the Arbitration remains pending and active before the AAA.

A court must compel arbitration under the FAA if the parties agreed in writing to arbitrate the dispute. "Under the FAA, an arbitration agreement in a transaction involving interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *ATP Flight Sch., LLC v. Sax*, 44 So. 3d 248, 250 (Fla. 4th DCA 2010) (quoting 9 U.S.C. § 2). The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") creates a strong "federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Williams v. Shapiro*, 161 F.4th 1313, 1318 (11th Cir. 2025) ("The Supreme Court has explained that the FAA 'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.' It 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]'" (quoting *id.*)).

The FAA requires "[C]ourts must rigorously enforce arbitration agreements according to their terms. . . ." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal citations omitted); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Written agreements to arbitrate "shall be valid, irrevocable, and enforceable" under the FAA, which further provides that a court must stay a

proceeding if it determines an issue before it is arbitrable under an agreement.  *See* 9 U.S.C. §§ 2, 3. The FAA also authorizes a court to issue an order compelling arbitration if a party fails to comply with an arbitration agreement.  *See* 9 U.S.C. § 4. "The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

"Under both federal and Florida law, a party has a right to arbitrate where: (1) a valid, written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Adams v. Lashify, Inc.*, 689 F. Supp. 3d 1146, 1153 (M.D. Fla. 2023) (Byron, J.) (citing *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004); *Marine Envt'l. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)).

Because the Arbitration Agreement between Tarver and Republic is a valid and enforceable contract encompassing Tarver's claims, the court should refer Tarver's claims to binding mandatory arbitration.

**B.    The FAA Requires Arbitration of Tarver's Claims.**

Referral of this case to arbitration is appropriate because there is a valid contract containing an arbitration provision between the parties, Tarver's claims in

9

this case fall within the scope of the arbitration agreement, and Republic has not waived the right to arbitrate.

> 1.   *There is a Valid Contract Between the Parties in which Tarver Agreed to Arbitrate.*

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. 5th DCA 2022) ("Because arbitration agreements are contracts, ordinary state law principles of contract formation apply.") "In Florida, an enforceable contract requires offer, acceptance, consideration, and sufficient specification of essential terms." *Adams*, 689 F. Supp. 3d at 1154 (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).

The Note and Arbitration Agreement are both valid and enforceable contracts. Under the Note, Republic promised to loan money to Tarver in exchange for a promise to repay. *See* Ex. A-1. Under the Arbitration Agreement, the parties exchanged mutual promises to arbitrate disputes. *See* Ex. A-2. Tarver and Republic mutually accepted and assented to those essential terms when they signed these Agreements. *Id.* Accordingly, a valid, enforceable agreement to arbitrate exists between Tarver and Republic. *See Adams*, 689 F. Supp. 3d at 1154.

10

The Parties therefore agreed "the enforceability and interpretation of [the Arbitration Agreement] shall be governed by the Federal Arbitration Act ("FAA") to the fullest extent possible," Ex. A-2 § 9, and the FAA therefore applies.

Section 3 of the FAA states in no uncertain terms that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Tarver is estopped from claiming anything to the contrary as he himself has *already initiated* arbitration against Republic for claims relating to the exact same loan that is subject of this action. To do so, Tarver relied on the Arbitration Agreement attached to his motion to compel arbitration, which he signed and filed in the Mobile County Court. *See* Ex. A-3. "[A] district court may apply judicial estoppel when a two-part test is satisfied: the plaintiff (1) took a position under oath in the bankruptcy proceeding that was inconsistent with the plaintiff's pursuit of the civil lawsuit and (2) intended to make a mockery of the judicial system." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) "The requirement that the prior inconsistent statement be made under oath is not 'inflexible or exhaustive.' More important than whether statements are under

oath is whether they are intended to mislead and deceive the court." *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 643 n.4 (11th Cir. 2019) (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002), *overruled on other grounds by Slater*, 871 F.3d 1174)). Any argument by Tarver that the Arbitration Agreement isn't enforceable could only be construed as an intentional effort "to manipulate the judicial system to his advantage." *Slater*, 871 F.3d at 1186, and judicial estoppel prevents him from claiming such.

2.      *The Arbitration Agreement Encompasses Tarver's Claims Against Republic.*

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960).  When an agreement to arbitrate "evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause," such a "clause is considered 'broad,' rather than 'narrow' . . . ." *Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.*, 670 F. Supp. 2d 1350, 1355 (S.D. Fla. 2009); *see also  Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (holding that arbitration clause providing for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement" was broad).

12

As explained above, the valid and binding Arbitration Agreement broadly requires arbitration of "any claim, dispute or controversy . . . whether in contract or tort or under common law, any state or federal constitution, **any statute**, regulation, or local law, or otherwise ("Claims" or "Claim"), **arising out of, in connection with, or relating to** . . . your **loan** . . . ; your relationship with the Lender; . . . **oral or written statements or communications**, disclosures, **electronic communications**, [and/or] **collection efforts** . . . **related to your loan** . . . ; **any disclosure of your information by Lender to any party**; and/or the existence, applicability, enforceability, or scope (**including whether a dispute is arbitrable**) of this Arbitration Agreement." Ex. A-2 at 1 (emphasis added). The Arbitration Agreement explicitly states that "[f]or the avoidance of doubt, Claim has the broadest meaning possible under this Agreement." *Id.* "When the Court faces a broad arbitration clause, as it does here, it 'should follow the presumption of arbitration and resolve doubts in favor of arbitration.'" *Mercury Telco Grp., Inc.*, 670 F. Supp. 2d at 1355 (quoting *Solvay Pharmaceuticals, Inc. v. Duramed Pharmaceuticals, Inc.*, 442 F.3d 471, 482 n.10 (6th Cir. 2006)).

Tarver's dispute squarely falls within any of the definitions of a Claim, as explicitly set forth in the Arbitration Agreement. The basis of Tarver's Complaint against Republic concerns (1) Republic's alleged failure to adequately investigate Tarver's alleged dispute with the credit bureaus regarding information furnished by

13

Republic regarding Tarver's Loan, (Doc. 1 ¶¶ 58–79), and (2) an alleged written electronic communication from Republic to Tarver to collect on his past-due Loan, (*id.* ¶¶ 82–86). That is, Tarver's claims arise out of, or at the very least relate to, the Loan, written and electronic statements about the Loan, information allegedly sent to the credit bureaus regarding the Loan, and alleged statutory violations in attempts to collect on the Loan. *See* (Doc. 1 ¶ 58) ("Defendant furnished information concerning Plaintiff to one or more consumer reporting agencies."); (*id.* ¶ 81) ("Defendant engaged in consumer collection activity directed toward Plaintiff."); (*id.* ¶ 84) ("Despite the notice, Defendant allegedly continued transmitting electronic communications to the Plaintiff."); (*id.* ¶ 85) ("Those communications included repeated requests for payment, account reminders, collection-oriented messaging, and related debt collection communications."). These claims all fall within the broad scope of the Arbitration Agreement's definition of a "Claim," which is expressly given "the broadest meaning possible." *See* Ex. A-2 at 1 § 1; Ex. A-3. Indeed, the Orange County Court already necessarily found as much with respect to Tarver's FCCPA claims when it ordered them to arbitration. *See* Ex. C. And Tarver's FCRA claims also fall within the scope of the Arbitration Agreement as already explained, meaning this action must be compelled to proceed, if at all, through the Arbitration.

Additionally, the Note and Loan are transactions involving interstate commerce as required under Section 2 of the FAA. The Supreme Court has

14

"interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-274 (1995)). "Because the statute provides for the enforcement of arbitration agreements within the full reach of the *Commerce Clause*, . . . it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' — that is, 'within the flow of interstate commerce.'" *Id*. (internal quotations and citations omitted).

The parties' transaction evidenced and governed by the Note involves interstate commerce. The Arbitration Agreement expressly provides:

> The parties acknowledge and agree that this Agreement is made pursuant to a transaction involving interstate commerce. Therefore, the parties agree that the enforceability and interpretation of this Agreement shall be governed by the Federal Arbitration Act ("FAA") to the fullest extent possible, notwithstanding anything else herein or any state law to the contrary.

Ex. A-2 § 9. The Eleventh Circuit has recognized such provisions evidence the parties' contemplation of an interstate commerce transaction. *See Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 875 n.5 (11th Cir. 2005) ("Here, the parties not only contemplated an interstate commerce connection when they entered into the lending agreements, but the payday lending transactions did, in fact, turn out to involve interstate commerce. . . . The Arbitration Agreements expressly

15

stipulated the lending transactions between Jenkins and Defendants involved interstate commerce and were governed by the FAA."). Furthermore, upon information and belief, Tarver is an individual residing in Florida, *see* (Doc. 1 at 12), who received a loan in Alabama, Ex. A-1 at 1 (listing Republic's 1234 Hillcrest Road branch location in Mobile, Alabama), from a Delaware company with its principal office in East Baton Rouge Parish, Louisiana. Such transactions affect interstate commerce. *See Wilson v. Par Builders II, Inc.*, 879 F. Supp. 1187, 1189 (M.D. Fla. 1995) (Kovachevich, J.) (holding a "consumer finance contract . . . is one based on a contract evidencing a transaction involving commerce."); Ex. A-2 § 9; *see also Jenkins*, 400 F.3d at 875 (holding consumer finance transaction between Georgia consumer and South Dakota bank was interstate commerce). Thus, the Note and Arbitration Agreement both involve commerce under the FAA.

    3.    *Republic Has Not Waived the Right to Arbitration.*

Because Tarver, not Republic, initiated this action, and the filing of this Motion is Republic's first substantive participation in this litigation, Republic cannot be said to have waived its right to arbitrate. *See Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995) ("Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party."). Tarver is not prejudiced by an order

16

compelling his claims—which are already subject to the mandatory pending Arbitration pursuant to the orders of 2 other courts—at this early stage of the case.

4.    *Any Doubts as to the Scope of the Arbitration Agreement Must be Resolved in Favor of Arbitration.*

Any question on the arbitrability of Tarver's claims should be decided by the arbitrator because the Arbitration Agreement says so explicitly. As stated in the Arbitration Agreement, the definition of "Claims" subject to binding mandatory arbitration includes "the existence, applicability, enforceability or scope (including whether a dispute is arbitrable) of this Arbitration Agreement." Ex. A-2 at 1 § 1. "This provision contains classic delegation language," *see Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1297 (11th Cir. 2022), and the Eleventh Circuit has recognized that where the parties to a contract have agreed to delegate questions of arbitrability to the arbitrator, as the above provision does, any issue that arguably falls within the scope of the at-issue arbitration provision must be so-delegated. *See id.* ("By committing issues about 'what is subject to arbitration' to an arbitrator's review, the provision clearly and unmistakably sends threshold arbitrability disputes to an arbitrator instead of a court."). That is precisely what Republic and Tarver have done by agreeing to the above provision.

Additionally, Tarver and Republic agreed "the AAA Consumer Arbitration Rules will apply to arbitrations . . . ." Ex. A-2 at 1 § 6. That agreement is further confirmation of the parties' intent to delegate questions of arbitrability to the

17

arbitrator. *See JPay, Inc. v. Kobel*, 904 F.3d 923, 937 (11th Cir. 2018) ("Collectively, these cases dictate that by incorporating AAA rules into an agreement parties clearly and unmistakably evince an intent to delegate questions of arbitrability."). Accordingly, even if there were questions regarding the arbitrability of Tarver's claims—which there are not given the broad terms of the Arbitration Agreement—those questions are for the arbitrator, not the Court, to decide.

### III.    CONCLUSION.

The only explanation for Tarver's filing of this action is to hinder the efficient administration of the pending Arbitration and impose needless additional costs on Republic. The Court and Republic should not suffer Tarver's abuse of the judicial process because there is a valid contract containing an arbitration provision between the parties that covers the scope of Tarver's claims, and two other courts have already separately ordered it be enforced. Republic therefore respectfully requests the Court enter an order compelling all claims Tarver may assert relating to his Loan or Republic's acts or omissions relating to same, including those asserted by Tarver in this action, to arbitration and dismiss or stay this action until completion of arbitration by the parties, along with any additional relief the Court deems just and proper.

Respectfully submitted this 8th day of June, 2026.

**BALCH & BINGHAM LLP**

*/s/  Christopher K. Walker*
Christopher K. Walker
Florida Bar No. 117993
Email: cwalker@balch.com
50 N Laura Street, Suite 2100
Jacksonville, FL 32202
Telephone: (904) 348-6879
Facsimile: (904) 396-9001
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that this 8th day of June, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send electronic notice to all parties registered to receive electronic notice, including Plaintiff Benjamin D. Tarver at litigation@civilfilings.com.

*/s/ Christopher K. Walker*
Christopher K. Walker

19